# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

LOVELESS A. JONES,         )
        )
    Petitioner,        )
        )
    vs.        )        **Case No. 4:07CV182MLM**
        )
MICHAEL BOWERSOX,        )
        )
    Respondent.        )

## <u>MEMORANDUM OPINION</u>

This matter is before the court pursuant to the Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner Loveless Jones ("Petitioner"). Doc. 1. Respondent filed a Response to Order to Show Cause. Doc. 12. Petitioner filed a Traverse. Doc. 16. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 8.

## I.
## BACKGROUND

Petitioner was charged by substitute information in lieu of indictment as follows: Count I, felony murder in the first degree pursuant to Mo. Rev. Stat. § 565.020.1, in that on May 1, 1998, Petitioner, after deliberation, knowingly caused the death of Wenzel Frost by shooting him, and Count II, armed criminal action pursuant to Mo. Rev. Stat. § 571.015, in that Petitioner committed the felony of murder first degree as charged in Count I by and through the use, assistance and aid of a deadly weapon. Petitioner was charged as a persistent misdemeanor offender. Resp. Ex. 2 at 80-81.

The Missouri appellate court summarized the testimony at Petitioner's trial as follows:[1]

---

[1]     In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." <u>Hall v.</u>

On May 1, 1998, at approximately 1:00 a.m. Wenzel Frost ("Wenzell") and John Frost were driving around. Wenzell had been drinking. At one point, Wenzell was forced to pull his car over to the curb because he had a flat tire. Shontay Calicutt and Donna Critten, friends of Wenzell, were standing on the sidewalk near the car. Wenzell then went around the corner of the building to get a toolbox. While he was gone, defendant walked past the group and said, "Little John messed up how you played me, how you let him play me." This phrase referred to a fight that occurred between defendant and Wenzell hours earlier.

When Wenzell returned defendant pulled out a gun and shot Wenzell several times hitting him in the abdomen and legs. Defendant then ran to his cousin's house and threw the gun in the sewer.

After Wenzell was shot, the group of friends on the sidewalk followed Wenzell to the home of Mary Davis. Wenzell told Mary Davis to call an ambulance because "Stupid-Loc" had shot him. Stupid-Loc is defendant's nickname. Wenzell died later that day as a result of the gun shot wound in his abdomen. John Frost, Shontay Calicutt, and Donna Critten all testified that they saw defendant shoot Wenzell. Mary Davis, Lonza Davis, and Nicole Gray identified defendant as Stupid-Loc and as the man who Wenzell said shot him.

Resp. Ex. 5 at 2.

The Missouri appellate court also held that, "[Petitioner] argued at trial that he shot Victim in self-defense because he thought Victim began to reach behind his back for a gun. Donna Critten

---

Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing  28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2);  Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991).  See also  Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)). Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d).  Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992).

testified that Victim did not reach behind his back. The jury found [Petitioner] guilty of second-degree murder and armed criminal action." Resp. Ex. 11 at 2. The court found Petitioner guilty of being a persistent misdemeanor offender and sentenced him to concurrent terms of twenty-five years in the Missouri Department of Corrections. Resp. Ex. 2 at 136-38.

Petitioner filed a direct appeal. Resp. Ex. 3. By decision dated April 18, 2007, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. 5. Petitioner filed two pro se post-conviction relief motions. Resp. Ex. 6 at 15-56. Counsel was appointed and filed an amended motion which motion was denied. Resp. Ex. 6 at 57-73, 76-81. Petitioner filed a Motion to Re-Open Post-Conviction Case. Resp. Ex. 7. The court granted this motion because the motion court filed to mail a copy of its decision to Petitioner or his appointed counsel. The court then issued another decision denying Petitioner post-conviction relief. Resp. Ex. 11 at 3. Petitioner filed an appeal of the motion court's decision. Resp. Ex. 8. By decision dated April 18, 2006, the Missouri appellate court affirmed the judgment of the motion court. Resp. Ex. 11.

On January 22, 2007, Petitioner filed his § 2254 Petition in which he raises the following issues:

> **Ground 1:** Petitioner was denied effective assistance of counsel when counsel failed to secure Mr. Wilson's presence at trial;

> **Ground 2:** Petitioner was denied effective assistance of counsel when counsel failed to call as witnesses Raj Nanduri, M.E., Police Officer Barry, Criminalist Margaret Owens, and Christopher Long, Ph.D.

Doc. 1.

Also, in his Traverse, Petitioner raises the following issues:

> **Ground 3:** The trial court erred in overruling Petitioner's requests to remove counsel and by failing to appoint a new attorney.

**Ground 4:** Petitioner was denied effective assistance of counsel because his trial counsel failed to cross examination witnesses Donna Critten, John Frost, and Shontay Calicutt regarding discrepancies in their testimony.

Doc. 16.

## III.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or

demonstrate that default will result in a fundamental miscarriage-of-justice; <u>Battle v. Delo</u>, 19 F.3d 1547, 1552 (8th Cir. 1994).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

Petitioner raised the issues of Grounds 1, 2, and 3 before the Missouri appellate court. He, therefore, has not procedurally defaulted these grounds for habeas relief. Petitioner did not argue the issue of Ground 4 before the Missouri appellate court. As such, Petitioner has procedurally defaulted the issue of Ground 4. Respondent has not addressed Petitioner's Grounds 3 and 4 as these issues were not raised in Petitioner's § 2254 Petition but rather in his Traverse.

Section 2254 requires that the *petition* "shall specify *all* the grounds for relief which are available to the petitioner." (emphasis added). <u>See</u> <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994); <u>Adams v. Armontrout</u>, 897 F.2d 332, 334 (8th Cir. 1990) (holding that a habeas petition must specify the grounds upon which relief is sought). Indeed, a traverse is not a proper means to raise additional grounds for relief. <u>See</u> <u>Cacoperdo</u>, 37 F.3d at 507. Petitioner did not raise the issues of Grounds 3 and 4 in his § 2254 Petition. Rather, he raised them for the first time in his Traverse which was filed on May 14, 2007. The court finds, therefore, that Petitioner has failed to comply with the specificity requirements of § 2254 in regard to the issues of Grounds 3 and 4 and that habeas relief on the basis of these grounds should be denied.

As stated above, Petitioner raised the issue of Ground 3 with the Missouri appellate court. In the interests of justice, therefore, the court will consider Petitioner's Ground 3 on its merits in addition to Grounds 1 and 2. Further, Petitioner's § 2254 Petition is timely filed.[2]

---

[2] The court notes that the Missouri appellate court issued its decision denying the appeal of the motion court's decision on April 18, 2006. Petitioner filed his Traverse on May 14, 2007. For Missouri prisoners the 1-year statute of limitations does not commence to run until the

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006)). "'To obtain habeas relief, [a habeas petitioner] must [] be able to point to the Supreme Court precedent he thinks the [] state courts acted contrary to or applied unreasonably.'" Id. at 283 (quoting Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. § 2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling

---

issuance of the mandate. Payne v. Kemna, 441 F.3d 570, 572 (8th Cir. 2006) ("Under Missouri state court procedures, [the petitioner's] post-conviction relief proceedings were not final until the issuance of the mandate."); Williams v. Bruton, 299 F.3d 981, 982-83 (8th Cir. 2002). The mandate of the Missouri appellate court is not before this court. Thus, assuming, arguendo, Petitioner could raise an issue for habeas review in his traverse, the court could not determine whether this issue was timely raised as it is possible the mandate on the appeal of Petitioner's post-conviction relief motion issued prior to May 14, 2006.

Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." <u>Id.</u> at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Law of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. 412-13.

<u>Williams</u> further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. <u>See id.</u> at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" <u>Copeland v. Washington</u>, 232 F.3d 969, 973 (8th Cir. 2000) (quoting <u>Williams</u>, 529 U.S. at 411). <u>See also Siers v. Weber</u>, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in <u>Williams</u> that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as

set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. <u>See also</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." <u>Williams</u>, 529 U.S. at 413. <u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in <u>Penry</u> that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." <u>Id.</u> at 793 (citing <u>Williams</u>, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." <u>Atley v. Ault</u>, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." <u>Boyd v. Minnesota</u>, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." <u>King v. Kemna</u>, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief,

the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**." Lomholt v. Iowa**, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 644 (2004)**.**

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 543 U.S. 1189 (2005). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much

a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that:

[It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

# IV.
# STANDARD APPLICABLE TO INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly

10

presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

# V.
# DISCUSSION

**Ground 1 - Petitioner was denied effective assistance of counsel when counsel failed to secure Mr. Wilson's presence at trial:**

Petitioner agues in support of Ground 1 that counsel had valid grounds under Mo. Rev. Stat. § 510.100 for requesting a continuance to secure Mr. Wilson as a witness; that had counsel requested a continuance, a continuance would have been granted; that counsel expected Mr. Wilson to testify that Petitioner and the victim did not physically fight earlier in the day prior to the victim's being shot; and that this testimony would have undermined the prosecution's theory that Petitioner shot the victim because the victim allegedly attacked Petitioner. Doc. 1 at 3. Petitioner also alleges that counsel previously spoke with Mr. Wilson; that she personally served him with a subpoena; and that counsel knew that Mr. Wilson would be able to attend the trial upon returning to town. Petitioner further alleges that counsel was ineffective for failing to request that the court issue a writ of attachment when Mr. Wilson did not appear at trial and that Petitioner was prejudiced by counsel's performance in this regard. Doc. 1 at 4.

Upon addressing the issue of Ground 1 the Missouri appellate court held as follows:

> [Movant] argues the motion court clearly erred ... because he raised facts indicating that Counsel was ineffective for failing to secure the presence of Mr. Wilson at trial by either requesting a continuance or a writ of body attachment. He contends that Mr. Wilson's testimony was necessary to counter the State's theory that Movant shot Victim because he did not want Victim to beat him up again. According to Movant, had Counsel not been ineffective in failing to secure Mr. Wilson's presence, there is a substantial probability that the result would have been different. Barnett, 103 S.W.3d at 768-69.

> Because Movant asserts Counsel was ineffective for failing to call a witness, he must show that (1) Counsel knew or should have known of the existence of the

witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense. Williams v. State, 168 S.W.3d 433, 441 (Mo. banc 2005). Counsel will not be found ineffective for not calling a witness who would not unequivocally support Movant's case. Worthington v. State, 166 S.W.3d 566, 577 (Mo. banc 2005).

Movant begins his argument by contending Counsel was ineffective because had she requested a continuance under section 510.100 or a writ of body attachment under section 491.150, she would have successfully secured Mr. Wilson's presence at trial. The State responds that Movant did not sufficiently plead facts to support his allegation that Counsel would have succeeded had she used either avenue to secure Mr. Wilson's appearance. The State also notes that Movant orally requested a continuance so that the court would not proceed until he could locate Mr. Wilson, but that the trial court denied Movant's motion.

The motion court did not focus on whether a motion for continuance under section 510.100 or a request for a writ of body attachment would have been successful. In addition to acknowledging that the trial court denied Movant's oral motion for continuance, the motion court found Movant's claim to be without merit because there was no reasonable probability, given the number of witnesses to the shooting, that the result of the proceeding would have been different had Mr. Wilson testified. Specifically, the motion court found Mr. Wilson's testimony would not have established Movant's innocence or provided a viable defense but would have merely contradicted other witnesses' testimony as to the events earlier in the day. Mr. Wilson was not an eyewitness to the shooting. Stated differently, the motion court found that Movant did not demonstrate he was prejudiced by the absence of Mr. Wilson at trial. Thus, if we agree with the motion court that Movant failed to demonstrate prejudice, we need not consider whether Counsel was ineffective. See Buckner, 35 S.W.3d at 420.

As stated above, Movant argues he was prejudiced by Counsel's failure to secure Mr. Wilson's presence because Mr. Wilson's testimony was necessary to counter the State's theory that Movant shot Victim because he did not want Victim to beat him up again. Movant notes that John Frost, Shontay Calicutt, and Donna Critten all testified that Movant "was the loser in a hand-to-hand fight with [Victim] hours before the shooting." In the State's closing argument, the prosecutor relied on the alleged fist fight to show that Movant was not acting in self-defense, but "just didn't want to get his butt kicked." According to Movant, if Mr. Wilson testified that Movant and Victim did not physically attack each other, the jury would have known that Movant did not shoot Victim because he feared Victim would punch him or to get revenge on Victim.

Responding to the motion court's findings that Mr. Wilson's testimony merely contradicted testimony of other witnesses about events earlier in the day, Movant argues State v. Butler, 951 S.W.2d 600 (Mo. banc 1997), supports a finding of ineffective assistance of counsel where counsel has failed to investigate and introduce

evidence that only weakens the State's case. In <u>Butler</u>, the movant claimed his trial counsel was ineffective for failing to investigate and adduce evidence directly connecting his nephew to the crime of murder with which he was charged. <u>Id.</u> at 606.

Resp. Ex. 11 at 3-6.

The Missouri appellate court proceeded to distinguish <u>Butler</u> from Petitioner's case and held that "[r]ather than holding movant's counsel ineffective for failing to present evidence that weakened the prosecution's case, the court in <u>Butler</u> found counsel ineffective for failing to investigate 'evidence that another person had an opportunity or motive to commit the crime charged.'" Resp. Ex. 11 at 7 (citing <u>Butler</u>, 951 S.W.2d at 606). The Missouri appellate court continued to consider that nowhere did the court in <u>Butler</u> find that counsel was ineffective or that prejudice existed "solely because counsel failed to introduce evidence that merely weaken[ed] the State's case. Significantly, unlike <u>Butler</u>, the jury's verdict in this case had overwhelming record support given the number of witnesses testifying they actually saw Movant commit the crime." <u>Id.</u>

The Missouri appellate court found, in regard to the issue of Petitioner's Ground 1, that:

> We find the motion court did not err in concluding that Movant failed to demonstrate prejudice because Mr. Wilson's testimony would not have established Movant's innocence or provided a viable defense as required by <u>Williams</u>, supra. Even if Mr. Wilson testified no physical attack occurred there is no reasonable probability the outcome of the proceedings would have been different. As the State notes in its response, Mr. Wilson's testimony would only have addressed a comment made during the State's closing argument. However, the overall thrust of the State's argument at trial was that Movant's belief Victim was about to reach for a gun *at the time of the shooting* was not reasonable. Testimony that Movant merely argued with Victim rather than having a physical fight the day before would not tend to prove Movant acted in self-defense because he thought Victim was about to reach for a gun at the time of the shooting. Movant's first point is denied.

Resp. Ex. 11 at 7-8 (emphasis in original).

Pursuant to <u>Williams</u>, 529 U.S. 362, the court will consider federal law applicable to the issue of Petitioner's Ground 1. As discussed above, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be

judged in hindsight. Strickland, 466 U.S. at 688-89. Further, counsel must exercise reasonable diligence to produce exculpatory evidence. Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir. 1991). The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." Id. The decision whether to call witnesses may be a matter of trial strategy. Hall v. Lubbers, 296 F.3d 685, 694 (8th Cir. 2002); Battle v. Delo, 19 F.3d 1547,1556 (8th Cir. 1994). "Strategic decisions 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." Strickland, 466 U.S. at 590.

Upon determining whether Petitioner received ineffective assistance of counsel because counsel failed to call Mr. Wilson as a witness the Missouri appellate court applied the second prong of Strickland and concluded that Petitioner was not prejudiced by counsel's failure to call Mr. Wilson. The court considered, in particular, in regard to Petitioner's allegation of ineffective assistance of counsel for failing to call Mr. Wilson, that Petitioner was required to establish that Mr. Wilson would have produced a viable defense; that calling Mr. Wilson would have "merely weakened the State's case"; and that there was overwhelming testimony to support the verdict based on the number of witnesses who testified that they actually saw Petitioner shoot the victim. The Missouri appellate court also considered that Petitioner testified that he shot the victim because he thought the victim was reaching to grab a gun; that Petitioner did not suggest that Mr. Wilson was a witness to the

shooting; and that under such circumstances, Mr. Wilson's testimony would not have supported Petitioner's claim that he acted in self-defense. This court notes that it cannot be said that it was unreasonable for counsel not to call Mr. Wilson as his testimony would not have been exculpatory. See Kenley, 937 F.3d at 1304. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable interpretation of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. See Strickland, 466 U.S. 687-88. The court finds, therefore, that Petitioner's Ground 1 is without merit and that relief on its basis should be denied.

**Ground 2 - Petitioner was denied effective assistance of counsel when failed to call as witnesses Raj Nanduri, M.E., Police Officer Barry, Criminalist Margaret Owens, and Christopher Long, Ph.D.**:

In support of Ground 2 Petitioner argues that Dr. Nanduri, Officer Barry, Ms. Owens, and Dr. Long would have testified as to test results regarding substances found in the victim's blood and vitreous fluids; that they participated in these tests in a professional capacity; and that through the testimony of these individuals the jury would have realized that the victim was under the influence of alcohol and marijuana when he was shot and that he was more likely to have been acting violently; that this would have supported Petitioner's testimony that he saw the victim reaching behind his back as if he were reaching for a gun; that because counsel never called Dr. Nanduri, Officer Barry, Ms. Owens, and Dr. Long "the jury never heard about the amount of alcohol in [the victim's] system or the effect it would have on him"; and that Petitioner was prejudiced in this regard. Doc. 1 at 7-8.

Upon addressing the issue of Petitioner's Ground 2 the Missouri appellate court held:

Movant argues the motion court erred in denying his Rule 29.15 motion because Counsel was ineffective for failing to call Dr. Nanduri, Officer Barry, Ms. Owens, and Dr. Long as witnesses to testify regrading Victim's intoxication at the time of the shooting. He urges he was prejudiced because their testimony would have

established that Victim was under the influence of alcohol and marijuana when shot, making it more likely Movant acted in self-defense.

Addressing this allegation, the motion court denied Movant's claims because there was significant evidence at trial that Victim was highly intoxicated, not acting normally, and that his actions reflected that he was intoxicated. In addition, Donna Critten specifically testified Victim was smoking marijuana. As a result, the court found no reasonable probability the outcome of the trial would have been different had the witnesses testified to establish alcohol in Victim's system. We agree with the motion court.

Counsel's decision to not call a witness is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless Movant clearly establishes otherwise. Williams, 168 S.W.3d at 441. Further, Counsel will not be found ineffective for failing to call a witness at trial to present cumulative evidence. Id. Here, as the motion court found, any testimony from Dr. Nanduri, Officer Barry, Ms. Owens, or Dr. Long regarding Victim's intoxication or marijuana use would have been cumulative to testimony of other witnesses at trial. In particular, John Frost testified Victim was so drunk he could not drive right and wrecked his car. Donna Critten testified John Frost and Victim were smoking marijuana earlier that night.

Movant argues evidence of the specific level of intoxication in Victim's blood was not cumulative to eye-witness testimony of Victim's behavior. However, in his Rule 29.15 motion, Movant concedes testimony of Victim's level of intoxication "would have corroborated the testimony" of John Frost and Donna Critten. Even if not technically cumulative, we agree with the State that evidence of Victim's specific level of intoxication would have only provided speculation about how Victim could have been acting. None of the witnesses to which Movant refers could testify regarding Victim's actual behavior. There is no reasonable probability the outcome of the trial would have been different had Counsel called the witnesses to testify about Victim's specific level of intoxication. See State v. Proby, 861 S.W.2d 814, 818 (Mo. App. S.D. 1993) (finding that counsel was not ineffective for failing to call expert to testify regarding the similarity of shoe treads he examined because testimony would be cumulative to testimony of police officer at trial).

Movant asserts Dr. Long could have testified as to alcohol's effects, including that alcohol can cause people to become belligerent. As the State notes in its brief, however, Movant did not make any allegation to the motion court that Dr. Long was qualified to testify or would have testified about the general effects of intoxication. Grounds for relief not raised in a Rule 29.15 motion are considered waived. Rule 29.15(d); State v. Mullins, 897 S.W.2d 229, 231 (Mo. App. S.D. 1995). "The effect of Rule 29.15(d) is to bar all claims not raised in a timely filed pleading." Mullins, 897 S.W.2d at 231. Thus, a point raised on appeal can be considered only to the extent the point was raised in the motion before the motion court. Id. Movant cannot raise the point for the first time on appeal. Id. Additionally, Movant does not allege

facts in either his Rule 29.15 motion or this appeal to support his allegation that Dr. Long was qualified to testify regarding alcohol's general effects as required for Movant to be entitled to an evidentiary hearing. See Barnett, 103 S.W.3d at 769. The motion court's denial of Movant's claim was not clearly erroneous. Movant's second point is denied.

First, when a State court dismisses a claim made in a State post-conviction relief motion on the grounds that the issue was procedurally defaulted under State law, a habeas petitioner may not raise the defaulted issue in a §2254 petition. See Heffernan v. Norris, 48 F.3d 331, 333 (8th Cir. 1995) (holding that a federal court cannot consider claims which a state prisoner has procedurally defaulted in state court absent a showing of actual innocence or cause and prejudice). Even when the State court sets forth an alternative ruling based on the merits of a claim made pursuant to a State post-conviction relief motion, the State court "may make reference to a federal claim without opening the door to habeas review." Taylor v. Norris, 401 F.3d 883, 866 (8th Cir. 2005). The door to federal habeas review is not opened where the State court "sets forth in a clear and plain statement that it decision rests on state law grounds, and as long as those grounds are adequate and independent of federal claims." Id. See also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."). Upon considering Petitioner's Ground 2, the Missouri appellate court held that, according to State law, Petitioner procedurally defaulted his claim that Dr. Long was qualified to testify regarding alcohol's effects. Thus, to the extent Petitioner argues in support of Ground 2 that Dr. Long was qualified to testify regarding the effects of alcohol, Petitioner has procedurally defaulted this argument pursuant to State law.

Pursuant to <u>Williams</u>, 529 U.S. 362, the court will consider that portion of Petitioner's Ground 2 which he has not procedurally defaulted. Upon addressing the issue of Petitioner's Ground 2, consistent with federal law discussed above, the Missouri appellate court considered that counsel's decision whether to call witnesses is presumptively a matter of trial strategy and that a defendant claiming ineffective assistance of counsel has the burden to establish otherwise. <u>See</u> <u>Strickland,</u> 466 U.S. at 590; <u>Hall,</u> 296 F.3d at 694; <u>Battle</u>, 19 F.3d at 1556. Further, consistent with federal law, the Missouri appellate court considered that testimony from Dr. Nanduri, Officer Barry, Ms. Owens, and Dr. Long regarding the victim's intoxication and use of marijuana would have been cumulative to testimony of other witnesses including Mr. Frost and Ms. Critten. <u>See</u> <u>Winfield v. Roper</u>, 460 F.3d 1026 (8th Cir. 2006) (holding that failing to present cumulative testimony is not ineffective assistance of counsel). The Missouri appellate court concluded that evidence of the victim's intoxication from the individuals whom Petitioner alleged should have been called would have only provided speculation regarding how the victim was acting; these witnesses, unlike Mr. Frost and Ms. Critten, could not testify as to the victim's actual behavior. Under such circumstances, pursuant to the second prong of <u>Strickland</u> the Missouri appellate court concluded that Petitioner was not prejudiced by the failure to question Dr. Nanduri, Officer Barry, Ms. Owens, and Dr. Long regarding the victim's intoxication; Petitioner could not show that the outcome of his trial would have been different had these witnesses been called to testify about the victim's specific level of intoxication. The court finds, therefore, that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable application of federal law. <u>See</u> <u>Strickland,</u> 466 U.S. at 590; <u>Winfield</u>, 460 F.3d 1026; <u>Hall,</u> 296 F.3d at 694; <u>Battle</u>, 19 F.3d at 1556. Further, the court finds that the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.

**Ground 3 - The trial court erred in overruling Petitioner's requests to remove counsel and by failing to appoint a new attorney**:

In support of Ground 3 Petitioner argues that he had a first meeting with counsel on November 3, 1998; that Petitioner and his counsel had an argument on this date; that Petitioner wrote a letter to counsel's supervisor in the St. Louis Public Defenders' Office; that counsel labeled Petitioner as hostile and disrespectful; that, therefore, a conflict of interest was created; and that the trial court denied Petitioner's requests for appointment of new counsel. Doc. 16.

Upon addressing the issue of Ground 3, the Missouri appellate court held:

On October 29, 1998, an assistant public defender was appointed to represent defendant. Shortly after their first meeting, defendant filed a motion to remove counsel claiming a lack of communication, competence, promptness, and diligence of appointed counsel. On February 8, 1999, defendant filed another motion to have counsel removed. He also wrote two letters to the public defender system expressing his dissatisfaction. Prior to trial, defendant filed a third motion to have counsel removed. On the day of trial defendant addressed the court with his concerns that he had not received effective assistance of counsel. The trial court ordered the trial to proceed with appointed counsel because their disagreements over strategy did not constitute grounds for appointment of a new lawyer.

... [D]efendant claims that the trial court abused its discretion by overruling his requests to remove counsel and by failing to appoint a new attorney. The trial court has discretion in determining if a defendant should be allowed to discharge his attorney. State v. Hornbuckle, 769 S.W.2d 89, 96 (Mo. banc 1989). "Appellate courts will not interfere with a trial court's exercise of discretion unless it clearly appears that it has been abused, and the appellate court will indulge every intendment in favor of the trial court." Id. To prevail on a claim of irreconcilable differences, defendant must show a total breakdown in communication. State v. Owsley, 959 S.W.2d 789, 792 (Mo. banc 1997). Defendant alleges that counsel would not look into witnesses that he wanted called to testify and would not question the prosecutions' witnesses in the manner he requested. He also complains of a lack of communication, diligence and promptness on the part of counsel and that a conflict of interest existed. None of these complaints show a total breakdown in communication. Point denied.

Resp. Ex. 5 at 3.

The legal file in Petitioner's case reflects that in a letter dated October 31, 1998, Petitioner complained that his appointed counsel had not come to see him. The legal file further reflects that on about November 9, 1998, Petitioner filed a "Motion and Formal Complaint to Withdraw" his counsel and that the alleged basis of his motion was that counsel failed to "challenged the validity of the evidence in possession of the state," to advise him of any information that would "negate" his guilt, to advise him of the names of witnesses, to submit to Petitioner "indictment papers," to let Petitioner listen to audio tape statements, to submit laboratory examination, to file motions which Petitioner had mailed to her, to represent Petitioner in front the grand jury, and "to communicate the posture of various levels of her representation." Resp. Ex. 2 at 25-26. Petitioner filed similar motions in February 1999 and June 1999. Resp. Ex. 2 at 37, 77. In the motion filed in June 1999 Petitioner alleged, in regard to grand jury proceedings, among other things, that his counsel was not present. Petitioner also alleged in the June 1999 motion that counsel failed to "attack the line up" and that counsel had created a conflict of interest with Petitioner as she had labeled him hostile and uncooperative. Additionally, Petitioner filed numerous pro se motions addressing, among other things, grand jury procedures and juror selection, and requesting that the prosecution disclose the names of witnesses. Resp. Ex. 2 at 28-76. Also, before the beginning of Petitioner's trial Petitioner addressed the court and asked if "there's any way possible I can have a new lawyer given to me on the grounds of" ineffective assistance of counsel and because there was a conflict of interest in his case. When asked by the court to state the basis of these claims Petitioner stated that he and his counsel had arguments "over certain situations." When asked to be more specific Petitioner said that counsel had failed to inquire regarding coercion of prosecution witnesses despite his request that she

do so; that in regard to the alleged conflict of interest counsel his counsel revealed information to the prosecution; and that counsel was not present during the grand jury inquiry. The court explained to Petitioner that he is not entitled to choose his lawyer, although he is entitled to competent counsel; that his counsel has an obligation to give certain information to the prosecution, such as the names of witnesses; and that a defendant does not have a right to be represented before the grand jury. Resp. Ex. 1 at 6-11. When asked if he had any other complaints, Defendant responded that he did not. Resp. Ex. 1 at 11.

Pursuant to <u>Williams</u>, 529 U.S. 262, the court will consider federal law applicable to Petitioner's Ground 3. Under federal law, "[a]n accused does not have an absolute right to counsel of his own choosing." <u>United States v. Mentozos</u>, 462 F.3d 830, 839 (citing <u>Meyer v. Sargent</u>, 854 F.2d 1110, 1113-14 (8th Cir.1988)). "The substitution of counsel is committed to the sound discretion of the trial court, <u>Meyer</u>, 854 F.2d at 1113-14, and the defendant bears the burden of showing justifiable dissatisfaction with appointed counsel to be granted a substitute. <u>Swinney</u>, 970 F.2d at 499." <u>Id.</u> Further, the Eighth Circuit has held as follows:

> The Sixth Amendment entitles criminal defendants to effective assistance of counsel which means "the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." <u>Nerison v. Solem</u>, 715 F.2d 415, 417 (8th Cir.1983). We review denial of a request for new counsel for abuse of discretion. <u>United States v. Barrow</u>, 287 F.3d 733, 737 (8th Cir.2002). In order for such a request to be successful, the defendant must show justifiable dissatisfaction with his current representation. <u>Id.</u> Justifiable dissatisfaction can arise from irreconcilable conflict, a complete breakdown in communication, or any other factor interfering significantly with an attorney's ability to provide zealous representation, but it is not established merely by a defendant's frustration with counsel's performance or disagreement with his tactical decisions. <u>Id.</u> at 738.

> [The defendant] has shown only that he was not happy with some of counsel's tactical choices and his reservation about giving the case his full "100 percent." [The defendant] has not demonstrated that he was prejudiced by any of the decisions about which he complains which were similar to those of counsel for the other defendants. ... . <u>See</u> <u>United States v. Swinney</u>, 970 F.2d 494, 499 (8th Cir.1992) ("(T)he district court must balance the defendant's right to counsel of his choice and the public's

interest in prompt and efficient administration of justice.") (internal quotations omitted). We conclude the district court did not abuse its discretion in denying [the defendant's] request for new counsel for sentencing.

United States v. Boone, 437 F.3d 829, 839-40 (8th Cir. 2006).

Significantly, consistent with federal law upon denying Petitioner relief on the ground articulated in Ground 3, the Missouri appellate court considered that it is within the trial court's discretion whether a defendant's attorney should be discharged. See Mentozos, 462 F.3d at 83; Meyer, 854 F.2d at 1113-14. The Missouri appellate court further considered, consistent with federal law, that Petitioner did not establish a complete breakdown in communication between himself and his court appointed counsel. See Boone, 437 F.3d at 839-40. Indeed, Petitioner's complaints regarding his attorney's performance were either unfounded or addressed matters of trial strategy. See Strickland, 466 U.S. at 590; Hall, 296 F.3d at 694; Battle, 19 F.3d at 1556. Also, the Missouri appellate court's findings regarding the right to counsel inside a grand jury room is consistent with federal law as the Supreme Court has held that there is no Sixth Amendment right to counsel inside a grand jury room. See United States v. Mandujano, 425 U.S. 564, 581(1976). As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.

## VI.
## CONCLUSION

The court finds that Petitioner failed to comply with the specificity requirements of § 2254 in regard to the issues of Grounds 3 and 4; that Petitioner's Grounds 1 and 2 and, alternatively, Ground 3 are without merit; and that, therefore, the relief sought in Petitioner's § 2254 Petition should be denied and that his § 2254 Petition should be dismissed. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because

Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the § 2254 Petition filed by Petitioner is **DENIED,** and this case is **DISMISSED**, with prejudice; Doc. 1

**IT IS FURTHER ORDERED** that t for the reasons stated herein, any motion by Petitioner for a certificate of appealability will be **DENIED**;

**IT IS FURTHER ORDERED** that a judgment incorporating this Memorandum Opinion shall issue this same date.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 17th day of September, 2007.